# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Teddy Atkins II,**
**Respondent Below, Petitioner**

**vs.)  No. 18-0084** (Kanawha County 16-D-361)

**Angela Atkins,**
**Petitioner Below, Respondent**

**FILED**

**January 14, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Teddy Atkins II, by counsel Tim C. Carrico, appeals the Circuit Court of Kanawha County's December 15, 2017, order denying his petition for appeal from a family court order on equitable distribution following the parties' divorce. Respondent Angela Atkins, by counsel Mark A. Swartz, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the lower courts erred in determining that two businesses, Angela's Salon LTD ("Angela's Salon") and Rare Form LLC ("Rare Form"), were not marital assets subject to equitable distribution.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 10, 2009, the parties married.[1] Respondent initiated divorce proceedings on March 11, 2016, and by "Agreed Bifurcated Divorce Order," the parties were divorced on December 22, 2016. The issue of equitable distribution of the marital estate was bifurcated from the divorce, however, and considered at a final hearing before the family court on June 7, 2017. At this hearing, both parties testified to their involvement with and purported interest in the two businesses that are the subject of this appeal.

Respondent explained that she incorporated Angela's Salon in 2006, more than three years prior to the parties' marriage. At the time of incorporation, all shares in the salon were issued to respondent, and she continuously owned those shares throughout the marriage.

---

[1]No children were born of this marriage.

1

Respondent was diagnosed with leukemia in 2011, and became very ill.[2] Following respondent's diagnosis, petitioner obtained his cosmetology license and began working at Angela's Salon. Petitioner received wages from the salon for his services. Additionally, petitioner signed tax returns as sole shareholder during respondent's illness, but respondent made clear that she did not transfer stock in the business to petitioner:

> Q. Okay. At any time during your marriage, up from the start of your marriage to today, did you sign anything, a stock certificate, an assignment, a bill of sale, any kind of document transferring any bit of your stock to [petitioner]?
>
> A. No.

Petitioner confirmed that there was no stock transfer:

> Q. . . . Can you show me a piece of paper, today, that [respondent] signed where she transferred stock in Angela's [S]alon to you?
>
> A. I cannot[.]

Respondent also testified that she formed Rare Form in July of 2010, approximately one year after the parties married but prior to her cancer diagnosis, in order to purchase the building out of which Angela's Salon operates. Respondent was Rare Form's sole member at the time of its formation. To purchase the building and capitalize Rare Form, respondent, who was married prior to her marriage to petitioner, used the proceeds from the sale of her prior marital home. Specifically, respondent received $62,626.27 following the sale of this prior marital home. She used $29,533.52 to close on the building owned by Rare Form and used most of the remaining funds to make improvements to the building.[3] Petitioner invested no funds into Rare Form.

At the time the Rare Form building was purchased, respondent signed a "Declaration of Limited Liability Company or Limited Liability Partnership and Authority to Borrow" form as Rare Form's member, and she is listed on that document as owning 100% of the company. Petitioner's name is not on this form or the closing documents, including the promissory note. Petitioner did, however, personally guarantee the loan to Rare Form. Additionally, the parties refinanced the loan in 2015, and each signed the refinancing documents as members of Rare Form. Respondent indicated that she added petitioner as a member of Rare Form in 2011 following her diagnosis, but she removed him in 2016 at the time of the parties' separation.

---

[2]In fact, respondent was determined to be permanently disabled in 2011. She received Social Security Administration disability payments until she returned to work following the parties' divorce.

[3]Technically, the closing on her prior marital home occurred approximately two months after the closing on the Rare Form building. Consequently, respondent drew on a line of credit to provide cash at closing on the Rare Form building, and then repaid that amount following closing on her prior marital home.

As with her testimony regarding Angela's Salon, respondent confirmed that she did not transfer equity in Rare Form to petitioner:

Q.    Did you sign any kind of assignment, transfer or deed or anything of that nature transferring any piece of your equity contribution to Rare Form or interest to [petitioner]?

A.    No.

Petitioner acknowledged the same:

Q.    . . . Do you have a piece of paper, as we sit here today, signed by my client that shows that she transferred equity or ownership in Rare Form to you?

A.    Other than the tax forms, no.[4]

Following this final hearing, the family court concluded that the two businesses belonged to respondent and, therefore, were not marital property subject to equitable distribution. The family court entered its final divorce order memorializing this ruling on October 20, 2017. Petitioner appealed this order to the circuit court. On December 15, 2017, the circuit court entered an order denying petitioner's appeal. It is from this order that petitioner appeals.

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the circuit court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

On appeal, petitioner argues that the circuit court erred in concluding that Angela's Salon and Rare Form were respondent's separate property, not marital assets.[5] With respect to Angela's Salon, petitioner argues respondent transferred that property to the marriage as a gift. In support of this argument, petitioner notes that the tax returns filed for the business list him as its sole

---

[4]Petitioner's assertion is predicated on the fact that the IRS Form 1099 regarding rent paid by Angela's Salon was issued to petitioner for 2014. It also appears that the parties listed the rental income on their jointly filed individual income tax returns; however, petitioner's rental units, classified as his separate property, are also listed. Respondent made no claim to petitioner's rental property.

[5]These businesses depreciated in value over the course of the parties' marriage; accordingly, petitioner is not claiming entitlement to any increased value in the businesses. *See* W.Va. Code § 48-1-233(2).

shareholder, as do bank refinancing documents. Petitioner also claims that the parties' conduct reflects the transfer. Namely, petitioner claims it is undisputed that he managed the salon's day-to-day operations during respondent's illness from approximately February 2011 through 2015.

West Virginia Code § 48-1-233 defines "marital property," generally, as "[a]ll property and earnings acquired by either spouse during a marriage[.]" Certain property is excluded from this definition, including "[p]roperty acquired by a person before marriage[.]" *Id.* § 48-1-237(1). It is undisputed that respondent incorporated Angela's Salon more than three years prior to the parties' marriage.

Moreover, petitioner failed to establish that respondent transferred Angela's Salon to the marital estate as a gift. In Syllabus Point 4 of *Whiting v. Whiting*, we held that

> [w]here, during the course of the marriage, one spouse transfers title to his or her separate property into the joint names of both spouses, a presumption that the transferring spouse intended to make a gift of the property to the marital estate is consistent with the principles underlying our equitable distribution statute.

183 W.Va. 451, 453, 396 S.E.2d 413, 415 (1990). Critically, petitioner has no evidence that title to Angela's Salon was transferred to him, and he cites to no law supporting his contention that identifying himself as a shareholder or president of Angela's Salon on the tax documents for that entity effectively transferred title to him. Rather, the uncontradicted evidence adduced below was that respondent, at all times, possessed all stock in the business. We, therefore, find no error in the lower courts' conclusion that Angela's Salon is not marital property subject to equitable distribution.[6]

With respect to Rare Form, we begin by noting that "[p]roperty acquired by a person during marriage in exchange for separate property which was acquired before the marriage" also constitutes "separate property," and not "marital property." W.Va. Code § 48-1-237(2). Although respondent formed Rare Form following the parties' marriage, she capitalized it with funds obtained through the sale of her prior marital home. In other words, Rare Form was acquired in exchange for separate property. Petitioner bases his ownership claim on the fact that he was a guarantor of the original loan with which the property was purchased and he signed refinancing documents in 2015. As with his previous claim, petitioner cites to no law that supports his position that guaranteeing a loan or signing loan documents, alone, transforms a separately acquired asset into marital property. Rather, the evidence showed that respondent's separate property was used to close on and make upgrades to the building.

---

[6]During the divorce proceedings, petitioner removed personal property from Angela's Salon valued at $31,196. The family court directed that petitioner repay this amount to respondent. Petitioner asserts that he should have been directed to pay only 50% of the value of the personal property because Angela's Salon is a marital asset. Having found that Angela's Salon is respondent's separate property, there is no basis for disturbing the family court's directive regarding repayment of this amount.

4

Petitioner also states that "the 1099 regarding income for rent paid by [Angela's] Salon to Rare Form . . . was issued as recent[ly] as 2014" to him and not to respondent. Petitioner claims this amounts to a commingling of separate and marital property, which transforms Rare Form into marital property. In support, petitioner cites *Hamstead v. Hamstead*, wherein we held that

> [w]hen an individual during marriage has property which is separate property within the meaning of *W.Va. Code*, 48-2-1(f) [now West Virginia Code § 48-1-237], and then exchanges that property for other property which is titled in his name alone, and which is not comingled with marital property, then that other property acquired as a result of the exchange is itself separate property.

184 W.Va. 272, 273, 400 S.E.2d 280, 281, Syl. Pt. 3 (1990).

This argument ignores the fact that Angela's Salon – respondent's separate property – paid rent to Rare Form, which, in turn, was used to pay the building's mortgage. Neither marital funds nor petitioner's separate funds were used to pay rent or to satisfy the mortgage obligation. Accordingly, petitioner did not demonstrate that respondent commingled funds such that Rare Form could fairly be classified as marital property subject to equitable distribution.

For the foregoing reasons, the circuit court's December 15, 2017, order denying petitioner's petition for appeal is hereby affirmed.

Affirmed.

**ISSUED:** January 14, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison